989 So.2d 1219 (2008)
Adrian EVANS, Appellant,
v.
STATE of Florida, Appellee.
No. 5D07-1320.
District Court of Appeal of Florida, Fifth District.
September 5, 2008.
*1220 James S. Purdy, Public Defender, and Nancy Ryan, Assistant Public Defender, Daytona Beach, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Ann M. Phillips, Assistant Attorney General, Daytona Beach, for Appellee.
COHEN, J.
Adrian Evans contends that the search of his duffle bag was illegal because the police did not sufficiently inquire whether the third party who consented to the search had common control and mutual use of it. While we agree that the search was illegal and the trial court erred in denying his motion to suppress, we conclude that the error was harmless.
After a jury trial, Evans was convicted of attempted robbery with a firearm, aggravated battery with a firearm causing great bodily harm, and aggravated assault with a firearm. The evidence showed that Evans entered an Xpress Food Mart intending to rob it and fired a handgun at least twice, wounding the cashier. A passing motorist heard gunshots and observed a man jump into a red car. The motorist followed the car to an apartment complex and notified the authorities. Using a canine, the officers tracked Evans to apartment # 5503 and also learned that the red car belonged to Sharon Dorsey, who loaned it to Evans that evening. Evans had been living in Dorsey's apartment for about a month.
The police went to Ms. Dorsey's apartment, #5515, within the same complex. Ms. Dorsey consented to a search of her apartment. She told the officers that Evans *1221 kept his duffle bag in her children's bedroom closet, but that he slept on the sofa, and there was no space in the apartment that was exclusively his. When the officers searched the closet, they found a.22 caliber handgun, which ballistic tests later determined to be the gun fired at the scene. They also found Evans' duffle bag. Although Dorsey told the officers that the duffle bag belonged to Evans, the officers relied on her consent to search his bag.[1]
The search of the duffle bag uncovered a partially loaded handgun magazine, a wool ski mask, and an ID. Evans moved to suppress the evidence found in the duffle bag because Dorsey did not have express or apparent authority to consent to its search. The trial court denied the motion to suppress, ruling that Dorsey had the authority to consent to the search of the duffle bag because it was in her home and under her care, custody, and control.[2]
A motion to suppress presents mixed questions of law and fact. Lassiter v. State, 959 So.2d 360, 363 (Fla. 5th DCA 2007). We first review the decision to determine whether there is competent, substantial evidence to support the factual findings after construing all of the evidence and reasonable inferences with a view to upholding the trial court's conclusion. Id. The trial court's application of the law to the facts is reviewed de novo. Id.
It is undisputed that Dorsey did not have actual authority to consent to a search of the duffle bag. Thus, the issue is whether she had apparent authority, i.e., mutual use of the duffle bag and joint access or control over it. See Marganet v. State, 927 So.2d 52, 55 (Fla. 5th DCA 2006) (citing United States v. Davis, 332 F.3d 1163, 1169 (9th Cir.2003)). The Supreme Court in Illinois v. Rodriguez, 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), extended who could consent to a search on behalf of a defendant to third parties with "apparent authority." The Constitution assures that no such search will occur that is "unreasonable." Marganet, 927 So.2d at 55.
In reaching its conclusion, the trial court focused on whether the duffle bag was under Dorsey's care, control, and custody within her home. This was erroneous because legal ownership is not a prerequisite for a legitimate expectation of privacy. United States v. Chaves, 169 F.3d 687, 690 (11th Cir.1999). Even when a defendant does not own the property searched, he or she may nonetheless have a reasonable expectation of privacy by virtue of his or her relationship with that place. Minnesota v. Carter, 525 U.S. 83, 89-91, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998). Evans, as a guest in Dorsey's apartment, had a legitimate expectation of privacy in the premises. See Minnesota v. Olson, 495 U.S. 91, 97-98, 110 S.Ct. 1684, 109 L.Ed.2d *1222 85 (1990) ("To hold that an overnight guest has a legitimate expectation of privacy in his host's home merely recognizes the everyday expectations of privacy that we all share."). Furthermore, a guest's suitcase is the type of container that historically has commanded a high degree of privacy. United States v. Salinas-Cano, 959 F.2d 861, 864 (10th Cir.1992).
The government has the burden of proving the effectiveness of a third party's consent. Id. The court explained:
The burden cannot be met if agents, faced with an ambiguous situation, nevertheless proceed without making further inquiry. If the agents do not learn enough, if the circumstances make it unclear whether the property about to be searched is subject to mutual use by the person giving consent, then warrantless entry is unlawful without further inquiry. The government must, therefore, come forward with persuasive evidence of both shared use and joint access or control of a container in order to support third party consent. Id. (Citations omitted).
Dorsey's consent did not preclude the need for the officers to make further inquiry. The reasonableness requirement in Rodriguez is interpreted to invalidate warrantless searches based on a mistake of law, not a reasonable mistake of fact. The officers' assumption that they had apparent authority was based on a mistake of law. Authority cannot be inferred merely from ownership of the house when the searching officer knows the suitcase belongs to the defendant. Salinas-Cano, 959 F.2d at 865-66. When a third party informs the officer that a closed container belongs to another person, it is not objectively reasonable for the officer, without making further inquiry, to search the container.[3] We conclude that Dorsey's comment to the officers that the duffle bag belonged to Evans put them on notice to make further inquiry sufficient to establish that she had both common control over the property and mutual use of it. See Marganet, 927 So.2d at 58 (citing Salinas-Cano, 959 F.2d 861).
Accordingly, we hold that the officers' search of Evans' duffle bag was unreasonable because Dorsey did not have common *1223 control or mutual use of it, and, therefore did not have apparent authority.
Having reviewed the record, we conclude the trial court's denial of Evans' motion to suppress was harmless error. See State v. DiGuilio, 491 So.2d 1129, 1139 (Fla.1986). Absent the contents of the duffle bag, the evidence at trial included the convenience store employee's positive identification of Evans and the eye witness's report of the gunshot, getaway vehicle, and its destination. The red car's description then led the canine unit to Evans and the vehicle's owner, with whom Evans had been living. Finally, the officers found in the closet Evans shared the.22 caliber handgun which ballistic tests established as the firearm used in the robbery. We conclude that there is no reasonable probability that the error contributed to the conviction. Id.
Therefore, we AFFIRM the Judgment and Sentence.
PLEUS and LAWSON, JJ., concur.
NOTES
[1] Evans never told Dorsey that she could go into his duffle bag, nor did she assure him that she would not go into it, although, as an ethical matter, she and her children would not go through his belongings without permission. She believed that, as the homeowner, she had the right to consent to a search of the bag.
[2] Preliminarily, we decline to affirm the trial court's order because the motion to suppress was filed untimely, as the State urges. Although the motion to suppress was untimely under both Florida Rule of Criminal Procedure 3.190(h)(4) and the trial court's pretrial order, defense counsel, the third attorney appointed, explained that he filed the motion as soon as he noticed the potential issue. The trial court did not deny the motion on this ground, but did not permit a separate evidentiary hearing in light of the speedy trial demand. The motion was heard during trial. The appellant does not raise any issue in this regard.
[3] See, e.g., United States v. Waller, 426 F.3d 838 (6th Cir.2005) (where defendant, a transient, was allowed to store some personal effects, including a zipped item of luggage, in a bedroom closet of friend's apartment, and did not inform him of the contents of his bag or give authority to look inside the bag, friend lacked authority to consent to search of luggage as he did not have mutual use of the luggage, nor did he have joint access and control for most purposes); United States v. Davis, 332 F.3d 1163 (9th Cir.2003) (holding officers, who were aware that roommate did not have authority to consent to search of bag found in defendant's bedroom, held a mistaken belief as to the law, which, even if reasonable, cannot establish apparent authority); People v. Gonzalez, 88 N.Y.2d 289, 644 N.Y.S.2d 673, 667 N.E.2d 323 (1996) (police knew all the facts, so their assumption that host could consent to search of guest's duffle bag was a mistake of law which cannot validate a third-party consent); Nix v. State, 621 P.2d 1347 (Alaska 1981) (in adopting apparent authority doctrine, court cautioned that "This does not mean that the police may proceed without inquiry in ambiguous circumstances or that they may reasonably proceed based on the consenting party's assertions of authority if those assertions appear unreasonable."). Cf. People v. Hopkins, 870 P.2d 478 (Colo.1994) (where officer obtained Green's consent to search fanny pack wrapped around Green's hand and nothing about the pack itself or the manner in which Green carried it cast any doubt as to whether he projected `an aura of authority' over the pack, and when in consenting Green neither stated nor gave any indication that the pack was not his, officer's assumption Green was owner of pack was objectively reasonable, as he encountered no ambiguous circumstances requiring him to make further inquiries).